(C. D. 1927)

Ross Products, Inc. *v.* United States

United States Customs Court, First Division

(Decided October 23, 1957)

*Siegel, Mandell & Davidson* (*Sidney Mandell* and *David Serko* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Mollie Strum* and *Sheila N. Schwartz*, trial attorneys), for the defendant.

*Lamb & Lerch* (*David A. Golden* of counsel) as *amici curiae*.

Before OLIVER, MOLLISON, and WILSON, Judges; MOLLISON, J., dissenting

OLIVER, Chief Judge: These two protests relate to certain rubber balls covered by two items included on the invoices involved herein. The collector classified the merchandise as toys, wholly or in chief value of rubber, under paragraph 1513 of the Tariff Act of 1930, as modified by T. D. 51802, supplemented by T. D. 51898, carrying a dutiable rate of 50 per centum ad valorem. Plaintiff claims that the articles are properly classifiable under paragraph 1502 of the Tariff Act of 1930 as rubber balls, "primarily designed for use in physical exercise (whether or not such exercise involves the element of sport)," not specially provided for, with a duty assessment of 30 per centum ad valorem.

One of the balls in question (described on the invoice with protest 280784–K as "Relief-mouled SPORT BALLS 4''—item G. 1024/5573/1–60'') is 4 inches in diameter, weighs 4 ounces, rattles when shaken, and is made with groovings and simulated stitching on an otherwise smooth surface (plaintiff's exhibit 1). The other item (described on the invoice with protest 293380–K as "SOCCER SPORT BALLS—item G. 1113/1121'') is a tan rubber ball, 5½ inches in diameter, weighs 8 ounces, rattles when shaken, and is made with groovings on a rough surface (plaintiff's exhibit 2). Both of the balls were gas-filled or air-filled at the time of importation and are not deflatable.

In addition to the samples of the two balls in question, the record consists of the oral testimony of 10 witnesses and several exhibits, illustrative of various kinds of rubber balls. Of the five witnesses

who appeared on behalf of plaintiff, two are associated with the plaintiff corporation, one being the president and the other employed as a salesman. One of plaintiff's witnesses stated he is a physical director of the Young Men's Christian Association. The remaining two witnesses called by plaintiff are teachers employed in the public school system of the City of New York.

The president of the plaintiff corporation, who bought this merchandise while in Germany, stated that his purchase order for the balls in question specified "reinforced ball construction"; that they were reinforced on the inside and designed for kicking and batting around and to "take all kinds of abuse." He stated that he had seen the balls in question being used in organized games at vacation resorts and in playgrounds for playing indoor baseball, stick ball, volley ball, field hockey, and water polo ball in swimming pools. He mentioned one instance where he saw factory workers, during lunch hour, playing soccer with the larger ball (exhibit 2, *supra*). His testimony concerning the users of these balls is as follows:

Q. From your observation as to use, could you tell us your recollection as to the age of the users?—A. They were used by men who were working in factories. I would say their average ages were from 18 to the middle 30's. They were used by youths of anywhere from about 12, 14, to 18 on other occasions. It depended on whether it was a playground, or self-organized by factory workers.

Q. Have you ever seen them used by children under the age—what age was the lowest you mentioned?—A. I would say approximately 12.

Q. Have you seen them used by children under that age?—A. I think I have seen them handled by younger children, where they would just throw the ball around. I have seen that also.

Q. How frequently have you seen that?—A. Well, on a few occasions before these activities would start, I would notice that some children would be catching with the ball, or warming up, but that was the exception rather than the rule. Most of the time it was being used in organized activities.

Plaintiff's testimony adduced from the physical director of the Y. M. C. A. and the two teachers of physical education is to the effect that the balls in question, and articles similar thereto, are used by children, ranging in ages from 6 years to 14 years, in playing "low organization" games which are described herein as—

Games for children who are unable to play the major sports, such as basketball, baseball, football, where a knowledge of the rules would be too complex for them.

Included in those games are dodge ball, kick baseball, tether ball, in which "the ball is encased in a mesh and the children bat it around a pole," and "the game of Newcomb" where "the children instead of batting the ball, simply catch it and throw it." The testimony of the teachers shows further that the Board of Education of the City of New York always uses rubber balls that are deflatable and never buys articles like those involved herein, and that neither of the balls

under consideration meet the specifications of a volley ball or a tennis ball used by the Board of Education.

All of defendant's five witnesses showed considerable experience with large domestic manufacturers of rubber balls, including articles similar to those under consideration. The president of the Barr Rubber Products Co., manufacturer of "about thirty million balls per year," explained that the term "reinforced," as it applies to the balls in question (exhibits 1 and 2, *supra*), means "double thickness," and he stated that "When you put any compound in rubber, it is reinforced from a technical point of view." The testimony of defendant's witnesses is to the effect that the balls in question are toy play balls, that they are exclusively used for the amusement of children between the ages of 6 to 12, and that they are not designed for competitive use or for use in tournaments. Rubber balls that are similar in all material respects to the two items in question, and which are manufactured by the various companies with whom the witnesses are associated, were received in evidence (defendant's exhibits A, B, D, E, F, G, J, K, and defendant's exhibits C–1 and C–4). They were characterized as children's play balls, designed to fit the toy trade. Concerning the use thereof, the testimony shows that they are exclusively used by children anywhere from 4 to 12 years of age, who kick, bounce, or roll the balls, or throw them against the side of a building, or play "pitch and catch."

It must be borne in mind that plaintiff herein has the twofold burden of showing, first, that the balls in question are not toys, as classified, and then establishing, by positive evidence, that these balls are "primarily designed for use in physical exercise," as provided for in paragraph 1502, *supra*, under which classification is claimed. Determining whether an article is a toy is controlled by statutory definition, set forth in paragraph 1513, *supra*, as follows:

* * * As used in this paragraph the term "toy" means an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development. The rates provided for in this paragraph shall apply to articles enumerated or described herein, whether or not more specifically provided for elsewhere in this Act.

While the element of "use" is highly important in the foregoing definition, the controlling test is the *purpose* for which an article is chiefly used. The appellate court, in *United States* v. *Calhoun, Robbins & Co.*, 21 C. C. P. A. (Customs) 167, 169, T. D. 46495, expressed the principle as follows:

* * * In construing the language of the toy paragraph * * * its full import is not determined in the ascertainment of *by* whom an article is chiefly used; it is necessary also to consider *for* what purpose it is used. So far as the statute is concerned, an article might be a toy without ever being actually used by a child, but, to be one, it must be chiefly used *for* the amusement of children. [Italics quoted.]

"Children," as that word is used in the phrase, "used for the amusement of children," appearing in the statutory definition of the term "toy" and as applicable to the issue before us, relates to "the period of a person's life from birth to the age of puberty or to the age when youth begins," *United States* v. *The Halle Bros. Co.*, 20 C. C. P. A. (Customs) 281, T. D. 46077.

The preponderance in weight of the evidence before us—oral testimony as well as samples of the balls in question and defendant's illustrative exhibits—viewed in the light of the statutory definition, hereinabove analyzed, establishes that the balls in question are chiefly used for the amusement of children and that they are toys, as classified by the collector. That the predominant use of these balls also involves the element of physical exercise in no way deters classification of the merchandise as toys, under the decision in *United States* v. *F. W. Woolworth Co.*, 24 C. C. P. A. (Customs) 338, T. D. 48770, wherein the appellate court stated, "If chief use for the purpose of amusement be properly deducible from all the facts and circumstances of record, then it would be immaterial that the balls are suitable also for physical exercise."

Considering the record further, and in connection with plaintiff's claim that these rubber balls are "primarily designed for use in physical exercise," there is only the broad and general statement by the president of the plaintiff corporation that these articles were "reinforced on the inside" to "take all kinds of abuse," and the explanation thereof in defendant's testimony, to the effect that when any compound is put into rubber it is a reinforcement. The evidence before us is wholly insufficient to establish that the balls under consideration are "primarily designed for use in physical exercise" under paragraph 1502, *supra*.

The present case is virtually a retrial of the issue that was presented in *United States* v. *Harry Grunberg*, 41 C. C. P. A. (Customs) 1, C. A. D. 520. The reasoning followed and the conclusion reached are consistent with the decision of our appellate court in that case.

For all of the reasons hereinabove set forth, the protests are overruled and judgment will be rendered accordingly.

### DISSENTING OPINION

MOLLISON, Judge: I dissent from the conclusion reached by my colleagues for the reason that I am satisfied that, although a preponderance in weight of the evidence may indicate that the involved balls are chiefly used by children, it also shows that such use is primarily and predominantly in connection with physical exercise and that such amusement as the children may derive therefrom is an incidental and secondary element of their use. I believe that the record thus demonstrates a primary design for use of the balls in physical

exercise which takes them out of the purview of paragraph 1513 and brings them into that of paragraph 1502.